**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Libby N. Rivera,<br><br>        Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting<br>Commissioner of Social Security,<br><br>        Defendant. | No. CV-12-0632-TUC-DTF<br><br>**ORDER** |

Plaintiff Libby Rivera brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). Plaintiff filed an opening brief, Defendant responded and Plaintiff replied. (Docs. 17, 20, 23.) The parties consented to exercise of jurisdiction by a Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1). (Docs. 6, 9.) The Court finds this case should be remanded for an award of benefits.

**PROCEDURAL HISTORY**

Rivera filed an application for Social Security disability insurance benefits (DIB) on May 20, 2009, and Supplemental Security Income (SSI) on July 20, 2009. (Administrative Record (AR) 105, 107.) Rivera alleged disability from April 21, 2009. (AR 105, 107.) Her application was denied upon initial review (AR 73-76) and on reconsideration (AR 79-85). A hearing was held on March 23, 2011 (AR 52-68), after which ALJ Norman R. Buls found, at Step Five, that Rivera was not disabled (AR 20-30). The Appeals Council denied Rivera's request to review the ALJ's decision. (AR 1-3.)

## FACTUAL HISTORY

Rivera was born on December 19, 1980, making her 28 at the alleged onset date of her disability. (AR 105.) She completed high school and had worked in jobs providing services to persons with disabilities. (AR 56, 57-59.) She was fired from her last job for missing too much work. (AR 59.) At the hearing, Rivera testified that she could not work due to pain in her head and neck, periodic numbness in her limbs, blurred vision, irritable bowel syndrome, depression, bipolar disorder and PTSD. (AR 60-61.) She subsequently clarified that she believed mentally she could work but her headaches, leg numbness and vision problems were not sufficiently under control to allow her to work. (AR 63-64.)

The ALJ determined Rivera had several severe impairments: Chiari Malformation type 1, depression, headaches, degenerative disc disease and obesity. (AR 22.) He also concluded she had non-severe impairments, positive tender points, numbness in the lower extremities and blurry vision. (AR 23.) The ALJ found that Rivera could do sedentary work, limited to simple, unskilled work. (AR 25.) The ALJ concluded Rivera could not perform her past relevant work but could perform other work available in the national economy. (AR 29.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.920, 416.1520; *see also Heckler v. Campbell,* 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's residual functional capacity (RFC) precludes him from performing his past work. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1198 (9th Cir. 2004).

## **DISCUSSION**

Plaintiff argues the ALJ erred in that: (1) his rejection of the treating physicians' opinions was not supported by substantial evidence; (2) he failed to provide sufficient reasons to find Rivera not credible; (3) he erred in finding the lay person testimony only partially credible; and (4) he failed to obtain the testimony of a vocational expert and erroneously relied upon SSR 85-15.

The Court notes, first, that the ALJ wholly rejected the consulting medical opinions of Drs. Kattapong, Estes, Foster-Valdez and Campbell, as well as the opinions of treating doctors Puglisi and Estevez, and gave only limited weight to examining psychologist King. (AR 27-28.) Thus, the ALJ was left with no medical opinions on which to rely,[1] and the

---

[1] In her response, the Commissioner cites the opinions of Drs. Kattapong and Estes as evidence to support the ALJ's conclusion. (Doc. 20 at 12, 14-15.) Because the ALJ explicitly rejected these opinions (AR 27), the Commissioner cannot rely upon them to support the rejection of the treating physicians' opinions.

- 3 -

1  Court cannot discern the basis for his conclusion that Rivera could perform sedentary work.

2  The Court finds this case can be resolved by addressing a portion of Plaintiff's first
3  claim – that the ALJ erred in rejecting the opinion of treating specialist Dr. Miguel Estevez.
4  On May 4, 2011, Dr. Estevez opined that Plaintiff could not do even sedentary work and was
5  unable to sit, stand or walk for any period of a work day. (AR 579-80.)

6  Although Dr. Estevez's opinion was contradicted by other doctors (albeit ones whose
7  opinions the ALJ also rejected), the ALJ still was required to provide "specific and legitimate
8  reasons," supported by substantial evidence, to reject his opinion. *Lester v. Chater*, 81 F.3d
9  821, 830-31 (9th Cir. 1995). The ALJ rejected Dr. Estevez's opinion finding it was not well
10 not supported by the record, in particular that Rivera's physical examinations were
11 unremarkable and she could do a variety of daily activities. (AR 28.) The Court examines
12 these two reasons below to determine if they are supported by substantial evidence.

13 **Medical Evidence of Record**

14 Because Dr. Rivera is a neurologist and his opinion relates solely to Plaintiff's
15 physical impairments, the Court examines the record only as it bears on those impairments
16 – Rivera's Arnold-Chiari malformation, numbness, blurry vision, headaches and
17 degenerative disc disease. The ALJ summarized the evidence as demonstrating that Rivera's
18 Chiari malformation was largely asymptomatic, her physical exams were unremarkable, her
19 small disc rupture was not causing spinal impairment, and her headaches were relieved with
20 conservative treatment. (AR 26.)

21 The ALJ cited selectively from the medical record to support his finding. He did not
22 mention that Rivera had cervical muscle and occipital notch tenderness in May 2009 (AR
23 331); in July 2009, diminished sensation in right limbs and EMG exam indicating right
24 radiculopathy [2] (AR 327, 321, 323); positive pressure points for fibromyalgia in March 2010
25 (AR 470); disparity in her upper and lower reflexes requiring follow-up in July 2010 (AR

---

[2]  The Commissioner cites a later March 2010 study when the EMG results were normal;
however, that tested solely Rivera's left side. (AR 478.)

- 4 -

459, 464-65); and a right C2-3 trigger point in August 2010 and March 2011 (AR 392, 582). Additionally, by July 2010, the Chiari malformation had progressed and she was being evaluated for surgical intervention. (AR 466.) The fact that other portions of her physical exam were normal does not undermine these significant findings. Nor did any of her doctors question her chronic, severe headaches and the need to continue searching for the cause and a remedy.

Although the occipital nerve blocks Rivera received for her headaches were helpful, they provided only temporary relief, in the range of forty-five days to two months, before the pain would have increased to its prior level. (AR 311, 461.) She achieved similar short-term relief from the lumbar puncture she had in late 2010. (AR 393, 581.) The Commissioner's role is to assess whether a claimant can work on a "sustained basis," 20 C.F.R. §§ 404.1512(a), 416.912(a), and "[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). Although Plaintiff did not often take narcotics for pain relief, this appears to be connected to her history of drug addiction not her level of pain. (AR 376.) She did take a variety of medications, included narcotics and over-the counter ones, none of which provided more than periodic relief from the constant headache pain. (AR 224-26, 238-39, 276, 330, 392, 397, 464.)

The ALJ discounted the seriousness of Rivera's symptoms because she had not obtained visual field testing or a neurosurgery follow-up, as had been recommended. Review of the record reveals that from the time she stopped working in April 2009, through the termination of the record in March 2011, Plaintiff pursued regular medical care with multiple doctors, participated in many exams and tried a variety of treatments. Further, an ALJ may not draw inferences based on a failure to seek treatment without inquiring for an explanation by the claimant or considering other record evidence that may explain the lack of care. SSR 96-7p. The ALJ did not seek an explanation for lack of treatment during the hearing nor did he indicate that he sought a rationale in the record. (AR 28-42.) The records indicate Rivera was in fear of the surgery, triggering a destructive outburst soon thereafter. (AR 376.)

1   Additionally, in those months during which she sought limited medical care, August 2010
2   to March 2011, her mental health was unstable, culminating in a suicide attempt in February
3   2011. (AR 376, 488, 491, 493, 497, 499, 501, 504, 515, 521-22, 567.) There also is a
4   reference in her mental health record from December 2010, that she was off AHCCCS at that
5   time and it was not reinstated until later in January 2011. (AR 498, 501, 504.)

6   In sum, there is not substantial evidence in the medical records to support the ALJ's
7   finding that Rivera experienced only minimal symptoms and they were resolved with
8   treatment. Rather, they indicate that Rivera's Chiari malformation was progressing over time;
9   with respect to her primary concerns, headaches and other neurological problems, doctors
10  repeatedly found signs to support her symptoms – cervical muscle and occipital notch
11  tenderness, indications of right radiculopathy, positive pressure points for fibromyalgia,
12  disparity in her upper and lower reflexes, and a right C2-3 trigger point; and the headache
13  treatments she tried were effective only for limited periods of time.

14  **Daily Activities**

15  Relying upon the testimony and function report of Rivera[3] and two function reports
16  by Lisa Taylor (her then-partner), the ALJ found that Rivera's daily activities were not
17  consistent with the findings of Dr. Estevez. The ALJ noted that, at the time of the hearing,
18  Rivera was spending much of her day participating in mental health treatment. (AR 27.) He
19  found that she could handle her personal care, prepare simple meals and perform some
20  household chores. (*Id.*) He also stated that she spent time interacting with others, she could
21  drive, use the computer, watch television, read, draw and play video games. (*Id.*)

---

[3] Although the ALJ discounted Rivera's credibility, he relied upon her testimony to establish her activities of daily living, therefore, the Court does the same. Further, the ALJ rejected her credibility on the same basis he rejected Dr. Estevez's opinion – medical evidence and her activities of daily living. For the same reasons the Court finds error regarding the ALJ's rejection of Dr. Estevez's opinion, the Court also finds error as to the ALJ's credibility finding. *See Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) (requiring the ALJ to provide clear and convincing, specific reasons to discount non-malingering claimant's credibility) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)).

1  Rivera's testimony that she spent most of her day participating in mental health
2  treatment (AR 61) was only accurate for the month prior to the March 23, 2011 hearing, due
3  to her attempted suicide on February 23. (AR 488, 491, 493, 567.) Further, spending the
4  majority of one's day in mental health treatment does not demonstrate an ability to function
5  in a full-time workplace.

6  In the other records, which cover a two-year period, her daily activities did not
7  contradict the findings of Dr. Estevez. Although she did report generally taking care of her
8  own personal grooming needs, in two of the documents cited by the ALJ, Rivera and Taylor
9  stated that she sometimes needed help because her legs would go numb and she needed
10 reminders to take her medications. (AR 187-88, 195-96.) Regarding food preparation, the
11 evidence revealed that, at most, Rivera would spend five minutes at a time preparing
12 sandwiches or cereal. (AR 170, 188, 196.) Taylor and Rivera reported that Rivera's
13 household chores were extremely limited and something she did rarely. (AR 170, 188, 196.)
14 Although Rivera was able to drive at times, she testified at the hearing that when her legs are
15 numb she is unable to drive and her vision problems can make driving hazardous. (AR 60.)
16 Her other cited activities, such as drawing or playing video games, could all be done on her
17 own schedule, when she felt capable of them. None of her activities required significant
18 physical exertion, maintaining a certain position, or sustained concentration. Thus, her
19 activities of daily living did not provide substantial evidence to support the ALJ's rejection
20 of Dr. Estevez's opinion.

## **CONCLUSION**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). The Ninth Circuit has held that a district court should credit as true evidence that was improperly rejected by the ALJ and remand for benefits if:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Here, the ALJ's rejection of the opinion of Dr. Estevez – that Rivera could not perform work at any exertional level and could not sit, stand or walk for any period of a work day – was not supported by substantial evidence. Further, there are no outstanding issues that require resolution because, crediting the doctor's opinion as true, it is clear the ALJ would be required to find Rivera disabled. Although there is no vocational expert testimony in the record, there is no question that a person who cannot work for any period of time in a day cannot perform any competitive remunerative work available in the national economy. *Id.* at 595 (finding disability when it is clear the claimant could not perform any work in the national economy, even if a vocational expert has not opined on the specific limitations established by the testimony credited as true). Additional proceedings after crediting Dr. Estevez's opinion as true would serve only to delay the inevitable award of benefits.

There is some dispute in the Ninth Circuit regarding whether the credit as true rule is mandatory or discretionary. *See Vasquez*, 572 F.3d at 593 (acknowledging the split in authority); *compare Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (finding the rule discretionary) *with Lester*, 81 F.3d at 834 (crediting the opinion rejected on insufficient grounds "as a matter of law"). Even if discretionary, the Court determined its application is warranted in this case. The Court recognizes that Dr. Estevez's opinion is highly restrictive and the manner in which he completed the form reflects minimal thought, which makes application of the rule less attractive. However, his opinion that Rivera cannot physically perform the requirements of full-time work is unmistakable. Further, as the Ninth Circuit has pointed out, if there are valid grounds for rejecting testimony, "it is both reasonable and desirable to require the ALJ to articulate them *in the original decision.*" *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (quoting *Varney v. Sec'y of Health and Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988)). The ALJ failed to do so. Significantly, the ALJ similarly failed to provide valid reasons for discounting the claimant's credibility; rejected every doctor's opinion on Rivera's physical impairments and all but a portion of one doctor's opinion on her mental impairments; and provided no foundation for his RFC finding. In light

1  of the ALJ's poorly reasoned opinion, the Court is persuaded that applying the credit as true
2  rule and remanding for benefits is the proper course in this case. *See Varney*, 859 F.2d at
3  1399 (noting that it is within the Court's discretion to remand for an award of benefits and
4  finding it appropriate when further proceedings would delay the receipt of benefits). To
5  remand this matter to the ALJ to consider the doctor's opinion again would subject Rivera
6  to a disability system of "heads we win; tails, let's play again." *Id.* (quoting *Moisa v.*
7  *Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004)).

8      Because the Court finds Plaintiff entitled to an award of benefits based on the ALJ's
9  error in his treatment of Dr. Estevez's opinion, it does not consider Rivera's other claims.

10      Accordingly,

11      **IT IS ORDERED** that the decision of the Commissioner is **REVERSED AND**
12  **REMANDED** for an award of benefits. The Clerk of Court should enter judgment and close
13  this case.

14      DATED this 4th day of September, 2013.

D. Thomas Ferraro
United States Magistrate Judge